Common Pleas Court of Hamilton County.

JOHN E. KATHMAN V. TITLE GUARANTEE & TRUST CO.

Decided November 2, 1933.

*Cornelius Petzhold,* for plaintiff.

*Moulinier, Bettman & Hunt,* for The Title Guarantee & Trust Company and the bondholders.

RYAN, J.

This action was brought by the plaintiff, the owner of certain mortgage bonds, to enforce the payment of the principal amount named in said bonds, in acordance with the terms of an indenture pursuant to which said bonds were issued.

The defendants are the Title Guarantee & Trust company, the Strand Building company, obligor, and the members of the bondholders committee. In the course of this proceeding the members of the bondholders committee, which was created under and by virtue of a depository agreement, were made parties hereto. Answers and supplemental answers were filed by the Title Guarantee & Trust company and the bondholders committee, but the defendant, the Strand Building Company is in default for failure to plead.

The undisputed facts are as follows: The plaintiff is the owner of bonds Nos. 8, 9 and 10 of the Strand Building Company, each in the sum of $1000.00 maturing November

15, 1930; that the interest coupons due on said bonds were paid on presentation, but that default was made in the payment of the principal at maturity; that the Strand Building Company in order to finance the erection of an office building and theatre issued bonds in the sum of $270,000.00 maturing in blocks of $12,000.00 and upwards on November 15th of each year from 1930 to 1940, the interest at the rate of 6¾% per annum being payable semi-annually on the 15th days of May and November, through the medium of coupons attached to said bonds. The first block of bonds amounting to $12,000.00, of which the plaintiff's three bonds are a part, matured on November 15, 1930. As security for the payment of the bonds and interest, a first mortgage on certain real estate and equipment consisting of an office building and theatre in Middletown, Ohio, was given by the Strand Building Company in favor of the Title Guarantee & Trust Company, in trust for the benefit and security of the holders of the bonds and coupons which were issued pursuant to the terms of a trust indenture entered into by and between the Strand Building Company and the Title Guarantee & Trust Company as trustee, for the purpose expressed as follows:—

"IN TRUST NEVERTHELESS, for the equal and proportionate benefit and security of all present and future holders of the aforesaid bonds and coupons issued and to be issued under and secured by this indenture, and for the enforcement of the payment of said bonds and coupons according to the tenor and true intent and meaning thereof and of the provisions and stipulations of said bonds and of this indenture, without preference or distinction as to lien or otherwise of one bond over any other bond by reason of priority in time of execution, issuance or negotiation or date of maturity thereof, or by reason of any other cause, so that each and every bond shall have under this indenture the same right, lien and privilege, and so that the principal and the interest on and the other obligations of every such bond shall be secured equally and ratably the same as if all had the same date of maturity and had been executed, issued and negotiated simultaneously with the execution and delivery of this indenture."

Subject also *inter alia* to the following provision:

"(6) Whereas the mortgagor has deposited or will deposit as a special deposit with the title company the pro-

ceeds of the original sale of said bonds, under the terms of which special deposit to be made by mortgagor the title company shall have the right to draw upon and use, for the payment of the first six (6) months' interest on said bonds payable May 15th, 1929, and the federal income and other taxes payable by mortgagor under the provisions of said bonds, so much of said special deposit as is necessary for that purpose; now, therefore, so much of said special deposit as is necessary for the payment of six (6) months' interest on said bonds, being the interest payment due May 15th, 1929, and said taxes, is hereby assigned to trustee for the purpose of payment of said interest, and title company is hereby authorized to transfer to trustee so much of said deposit for such purpose. Said special deposit may be used, so far as necessary for the payment of any other maturing interest or principal or other obligations of said bonds, and the remainder thereof (after payment of certain mortgages on said real estate heretofore existing) shall be applied to the payment of labor and materials entering into the construction and equipment of said theatre, store and office building.

"Beginning with and on the tenth day of June, 1929, and on the tenth day of each month thereafter, to and including the tenth day of November, 1929, the mortgagor covenants that it will make monthly deposits with the Title Guarantee and Trust Company of Cincinnati, Ohio, each monthly deposit to be equal to one-sixth (1/6) of the amount of interest which will mature on November 15, 1929, and that beginning on the tenth day of December 1929 and on the tenth day of each month thereafter, to and including the tenth day of November, 1940, it will make monthly deposits with the said the Title Guarantee and Trust Company of Cincinnati, Ohio, each monthly deposit to be equal to one-twelfth (1/12) of the amount of the principal and interest which will mature during the period of twelve months next ensuing from and after the date fixed for such monthly deposit with the exception, that the monthly deposits respectively in the twelve months beginning the tenth day of December, 1939, shall not be required to exceed the amount of the deposits above provided for the corresponding month of the previous year.

"Said deposits are hereby assigned to the trustee for the purpose of paying the interest and principal on said bonds as they mature, and title company is hereby directed and authorized to pay said deposits to the trustee for that purpose, provided that title company or the trustee shall not be required to so pay over or apply said deposits while there is any outstanding default in the making of any obligation of the mortgagor under this indenture.

"To the extent of the amount of said monthly deposits, all rents, issues and profits collected or derived from the premises, including the revenues from the operation of the theatre thereon, after payment therefrom of the current operating expenses of the premises, shall be applied to the payment of said monthly deposits and shall, as collected, or derived, be paid to title company and be treated in every respect as part of said monthly deposits and be applied as aforesaid, and this obligation shall constitute a first and prior charge upon said rents, issues, profits and revenues. All the net rents, issues and profits collected or derived from the premises, including said theatre revenues, are hereby declared and agreed to be included in the security created by this indenture for the bonds and for the full performance of all the obligations of the obligor and the mortgagor on or under said bonds or this indenture and are hereby assigned to the trustee for the purposes of such security. The mortgagor hereby agrees that until all said bonds shall have been fully paid and all the provisions of this indenture fully satisfied, the said operating expenses of said premises shall not be treated as including any compensation, interest or profits to it for the management of or investment in said premises or otherwise, excepting any compensation, interest or profits payable out of the surplus of such rents, issues and profits remaining after the due and full payment of said monthly deposits. * * *"

And paragraph 15, as follows:—

"(15) In case default shall be made in the payment of the principal of or any interest on any of said bonds, or in the due observance of performance of any covenant or condition whatsoever in any of said bonds or of or in this indenture required to be kept or performed by the mortgagor, and any such default shall continue for a period of sixty (60) days after the written notice thereof to the mortgagor by the trustee or the mortgagor and trustee by the holders of not less then twenty-five per cent (25%) in amount of the bonds hereby secured and then outstanding, specifying wherein such default consists, then and in such case the trustee, in its discretion, and without any action on the part of any bondholder, may, and upon the written request of the holders of not less than one-fourth (1/4) in amount of the bonds then outstanding, shall, or in the case of its refusal or failure so to do and act within ten days after such request, the holders of not less than twenty-five per cent (25%) in amount of said bonds outstanding, may declare the principal of all bonds hereby secured

.and then outstanding to be due and payable immediately, and upon such declaration the said principal, together with the interest and taxes accrued thereon, shall become and be due and payable immediately, at the place of payment aforesaid, anything in this indenture or in said bonds to the contrary notwithstanding." * * *

Also paragraph 16, as follows:—

"(16) In case default shall be made in the payment of the principal or of interest on or any income or other tax obligations of any of said bonds or in the due observance of or performance of any covenant or condition whatsoever of or in any of said bonds or of or in this indenture required to be kept or performed by the mortgagor and such default shall continue for a period of sixty (60) days after written notice thereof, as provided for in the paragraph numbered 15 hereof, the mortgagor covenants at any time or times, upon demand of the trustee, forthwith to surrender to it, and the trustee shall be entitled to take actual possession of the premises, or any part thereof, as for condition broken and, in its discretion, may, with or without force, and with or without process of law, and before or after declaring the principal of said bonds immediately due, and without any action on the part of any bondholder, enter upon, take and maintain possession of all or any part of said premises, and may, as the attorney-in-fact or agent of the mortgagor or in its own name as trustee, hold, manage and operate said premises and collect the rents and revenue thereof and lease the same in such parcels and for such times and on such terms as it may see fit, and may cancel any lease or sub-lease for any cause or on any ground which would entitle the mortgagor to cancel the same, and may sign the name of the mortgagor or its successors or assigns to all papers and documents in connection with such operation, and shall, after paying out of the revenue from said premises all expenses of management and operation of said premises, including insurance premiums and the cost of such repairs, replacements, alterations and useful additions as may seem to it proper and judicious, and all taxes, assessments or charges or liens upon said premises or any part thereof, together with reasonable attorney's fees, and after retaining reasonable trustee's fees for its services in that behalf and such further sum as may be sufficient to indemnify the trustee against any liability, loss or damage on account of any matter or thing done in good faith in pursuance of the duties of the trustee hereunder, apply the residue, if any, first to the payment of the defaulted coupons, if any, in order of their maturity, with interest

thereon at the rate of eight per cent per annum from date of maturity thereof, next to the payment of accrued interest on bonds which shall have become due by lapse of time or declaration, and next to the payment of the principal of those of said bonds, if any, then matured by lapse of time or declaration, and unpaid; in every instance such payment to be made ratably to the persons entitled thereto without discrimination or preference. Upon the payment in full of whatever may be due for principal or interest or other obligations on said bonds or be payable for any other purpose, before any sale of the premises or the entry of any order, judgment or decree for the sale thereof in a judicial proceeding for the foreclosure of the lien hereof, the trustee, after making such provision as to it may seem advisable for the payment of the next semi-annual installment of interest, shall, subject to the leases or contracts made in the exercise of the powers herein above granted, restore to the mortgagor the possession of said property, which shall thenceforth be subject to this indenture as if such entry had not been made. The power of entry and the power incidental thereto, as herein provided for, may be exercised as often as occasion therefor shall arise and their exercise shall not suspend or modify any other right or remedy hereunder. All leases or other contracts for use or occupancy of premises or any part thereof shall be deposited with the title company."

It further appears from the pleadings and the evidence that for the year beginning December 10, 1929, the monthly deposit required to be made by the Strand Building Company under the terms of the bonds and the trust indenture to provide a fund for the subsequent maturing principal and interest, amounted to $2,518.75; that the last full monthly deposit was made on June 2, 1930, this being the deposit due May 10, 1930; that after the payment of interest coupons due May 15, 1930, there remained on hand a balance of $6,000.00; that the trustee on October 27, 1930, entered into possession of the premises under the provisions of paragraph 16 of the indenture. The total monthly deposits required to be made from June to October 1930, inclusive, amounted to $12,593.75 and were then due and unpaid. The amount received by the Title Guarantee & Trust Company as trustee, from May 10, 1930 to October 27, 1930, was $7,375.00, and that there was a default in the sum of $5,218.75 and that up to and including October,

1930, the deposits were allocated to principal and interest, but after that time the money on hand was treated as one general fund; that no amount was received by the Title Guarantee & Trust Company from October 27 to November 15, 1930 when plaintiff's bonds matured, but that about a week later by reason of receipts from the operation of the theatre there was on hand a sum sufficient to meet the matured bonds. The installment of $2,518.75, which was due November 10, 1930, not having been paid, the total amount of the delinquency on the date of maturity of plaintiff's bonds was $7,737.50.

It further appears from the evidence that the plaintiff, Kathman, deposited the bonds Nos. 8, 9 and 10 with coupons attached, with a bank for collection; that the interest coupons thereon were paid, but the bonds were returned and the principal not paid.

It further appears that pursuant to the provisions of paragraph 15, on July 25, 1931, the Title Guarantee & Trust Company, as trustee, declared all bonds to be in default.

The first question presented is whether the trustee is under the mandatory duty to apply the balance of the funds on hand, after the payment of the interest coupons maturing November 15, 1930, to the payment on account of the bonds maturing on that date.

The plaintiff contends that the Title Guarantee & Trust Company had no discretion as to the distribution of the fund on hand at the date of the maturity of his bonds, but that it had the absolute duty to apply said fund to the payment of said bonds.

The defendant contends, and the trustee conceives it to be its duty, to retain all funds for future distribution to all bondholders ratably without regard to date of maturity, and that the payment on account of bonds maturing November 15, 1930, would be creating an unjustifiable preference.

It is further contended by the defendant that it was not required to make payment on account of plaintiff's bonds for the reason that it was provided in paragraph 6 of the indenture that the trustee shall not be required to pay over or apply said deposits while there is any outstanding de-

fault in the making of any obligation of the mortgagor under this indenture.

It will be noted from the testimony of Mr. Westheimer, vice president and treasurer of the Title Guarantee & Trust Company, that the trustee did not take possession after written notice pursuant to paragraph 15 of the indenture, but that an arrangement was made in pursuance of which the business of the Theatre Company was conducted under what might be termed an amicable receivership for the purpose of tiding over what was considered to be a temporary period of depression. The only notice of default was that of July 25, 1931 under the provision of paragraph 16, which declared all bonds matured.

Reviewing the authorities we find that the courts under some jurisdictions have adopted what is commonly called the early maturity rule, under which the holders of notes secured by mortgage, or deed of trust, have priority in the proceeds of the property according to the respective dates of maturity of the notes, the earliest being first and the latest last.

In other jurisdictions we find the courts to have adopted the *pro rata* rule which, generally speaking, requires that the holders of notes secured by the same mortgage or deed of trust, share ratably in the proceeds of the mortgage security where it is insufficient to pay all. In jurisdictions applying either of these rules we find exceptions where the courts have refused in particular cases to apply the rule, being governed by the stronger equities. It is the universal rule that parties may, by agreement, express or implied, invoke the *pro rata* rule in a case where it ordinarily would not apply, or may suspend its operations where but for such agreement it would apply. The authorities in Ohio seem to favor the early maturity rule as witness the cases of: *Bank* v. *Covert*, 13 O. S. 240; *Winters* v. *Bank*, 33 O. S. 250; *Anderson* v. *Sharp*, 44 O. S. 260; *Coons* v. *Clifford*, 58 O. S. 480. See also 50 L. A. R. 554.

In the instant case the court is not limited by the equities of the case alone, but is bound by the terms of the indenture. The funds on hand having been allocated to principal and interest, the court is of the opinion that the plaintiff was entitled to share *pro rata* with the holders of

the other bonds maturing November 15, 1930, in the balance of the fund left after the payment of interest coupons due on that date. Further, that in considering the contention made with reference to paragraph 6, the court interprets the term "outstanding default" as used, to mean a default continued after written notice thereof to the mortgagor as provided in paragraph 15, and that there was on November 15, 1930, no outstanding default; and further, that the application of the fund to the payment of the interest coupons due is sufficient to negative the idea that the trustee was electing not to pay over or apply said deposits.

In view of the above the court is of the opinion that the trustee was under the mandatory duty of applying the balance of the fund on hand, after the payment of the in interest coupons due on November 15, 1930, to the payment of the bonds which fell due on that date.

The next question presented is as to whether the trustee has the discretion of paying the balance due on account of the matured bonds out of the funds received after November 15, 1930, or whether it was obliged to continue to accumulate funds in order to await further developments including the operation of the mortgaged premises.

As to this question the court is of the opinion that the trustee then occupying the dual position of trustee and amicable receiver, and the funds never having been allocated to the payment of principal and interest, had the discretion of continuing to accumulate funds to await further developments including the operation of the mortgaged premises.

The third question presented is as to whether the trustee has the discretion to pay out of the funds in its hands, coupons which matured subsequent to November 15, 1930.

Answering this question the court is of the opinion that the trustee has no discretion to distribute the funds in its hands in payment of coupons maturing after November 15, 1930, for the reason that there was no amount allocated for the payment of principal and interest, and if there were, then the bonds which matured on November 15, 1930 would be entitled to priority over principal or interest coupons subsequently due.

An entry may be drawn in accordance herewith.